SPORTSMAN'S PARADISE, INC., Howard F. Harris, Defendant-Appellant,

v.

SPORTS CENTER, INC., Howard F. Harris, Defendant-Appellant,

v.

Howard F. HARRIS and Bonnie L. Harris, Defendants-Appellants,

v.

The NATIONAL BANK AND TRUST COMPANY OF SOUTH BEND, Plaintiff-Appellee.

No. 3–1080A327.

Court of Appeals of Indiana, Third District.

Aug. 25, 1981.

Robert L. Stephan, South Bend, for defendants-appellants.

James D. Nafe, South Bend, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

This consolidated appeal arises from the trial court's entry of default judgments in favor of The National Bank and Trust Company of South Bend. The defendants in the three actions are: Sportsman's Paradise and Howard F. Harris, president; Sports Center, Inc. and Howard F. Harris, president; and Bonnie L. Harris and Howard F. Harris. (Hereinafter "Harris" refers to the corporations and the Harrises.) Harris asserts as error the trial court's rulings striking his answers and counterclaims and entering default judgments in favor of the Bank.

The record reveals the following:

November 7, 1979: Complaints filed by Bank.

November 27, 1979: Answers were due from Harris. (Ind. Rules of Procedure, Trial Rule 6(C)).[1] None filed.

December 5, 1979: Attorney Robert L. Stephan entered appearance on behalf of Harris.

December 19, 1979: Bank filed motions for summary judgment, with supporting affidavits.

January 9, 1980: Harris filed affidavits in opposition to motions for summary judgment.

January 10, 1980: Hearing had on motions for summary judgment.

January 29, 1980: Harris, without leave of the court, filed answers and counterclaims and moved to consolidate the cases.

February 14, 1980: Bank filed motions to strike Harris's answers and counterclaims.

February 28, 1980: Harris filed briefs in opposition to motions to strike.

February 29, 1980: Court denied Bank's motions for summary judgment; court granted Bank's motions to strike Harris's answers and counterclaims; Bank filed motions for default.

March 7, 1980: Harris filed motions to reconsider the motions to strike answers and counterclaims; motions for enlargement of time to file answers and counterclaims; motions in opposition to Bank's motions for default application and to allow filing of answers and counterclaims.

March 13, 1980: Hearing had on all pending matters and then continued.

March 17, 1980: Harris given additional day to file brief.

March 18, 1980: Harris filed brief.

May 27, 1980: Court denied all Harris's motions and granted Bank's TR. 55(B) motions for default.

Indiana Rules of Procedure, Trial Rule 55(A) provides:

"Entry. When a party against whom a judgment for affirmative relief is sought *has failed to plead* or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted." (Emphasis added.)

Indiana Rules of Procedure, Trial Rule 55(B) provides in pertinent part:

"... If the party against whom judgment by default is sought has appeared in the action, he, (or, if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application...."

---

1. The sections of TR. 6 relevant to this case provide:

"(B) Enlargement. When an act is required or allowed to be done at or within a specified time by these rules, the court may at any time for cause shown
(1) order the period enlarged, with or without motion or notice, if request therefor is made before the expiration of the period originally prescribed or extended by a previous order; or
(2) upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect; but, the court may not extend the time for taking any action for judgment on the evidence under Rule 50(A), amendment of findings and judgment under Rule 52(B), to correct errors under Rule 59(C), or to obtain relief from final judgment under Rule 60(B), except to the extent and under the provisions stated in those rules.

"(C) Service of pleadings and Rule 12 motions. A responsive pleading required under these rules, shall be served within twenty [20] days after service of the prior pleading. Unless the court specifies otherwise, a reply shall be served within twenty [20] days after entry of an order requiring it. The service of a motion permitted under Rule 12(B) alters the time for service of responsive pleadings as follows, unless a different time is fixed by the court:
(1) if the court does not grant the motion, the responsive pleading shall be served in ten [10] days after notice of the court's action;
(2) if the court grants the motion and the corrective action is allowed to be taken, it shall be taken within ten [10] days, and the responsive pleading shall be served within ten [10] days thereafter."

In *Hiatt v. Yergin* (1972), 152 Ind.App. 497, at 509, 284 N.E.2d 834, at 841, this Court held:

> "A delinquent party only need be nimble enough to plead or otherwise comply with the rules within the three-day period in order to avoid the default question entirely. Yergin wisely filed a responsive pleading on May 4, the very day Hiatt filed the Application for Default Judgment. Thus the question became moot even before a hearing could be held under the three-day notice requirement."

To the extent that Hiatt permitted a party to file an untimely answer as a matter of right, subsequent to a motion for default judgment, it was overruled by *Clark Co. St. Bank v. Bennett et al.* (1975), 166 Ind.App. 471, 336 N.E.2d 663.

*See also: Erdman v. White* (1980), Ind. App., 411 N.E.2d 653; *Snyder v. Tell City Clinic* (1979), Ind.App., 391 N.E.2d 623. The issue in these cases was whether the three-day notice requirement contained in TR. 55(B) could operate to allow a party further time in which to plead and thereby entirely avoid the issue of default. In deciding that issue, the Court in *Clark Co. St. Bank, supra,* 336 N.E.2d at 667, stated:

> "Our interpretation of the purpose of the three day notice requirement is to provide the defaulting party with the opportunity to appear and demonstrate to the court reasons why its discretion should be exercised in favor of proceeding to trial on the merits."

The issue in the present case is totally distinct from the issue decided in the above-cited cases. Here, Harris filed his answers 31 days before the motions for default were filed. The critical issue therefore is not whether the three-day notice requirement may extend the time for filing an answer, but rather, does a party have a right to file an answer, beyond the 20 days provided for in TR. 6, but before a motion for default is filed.

Trial Rule 55(A) specifically provides that a party may be defaulted if it *"has failed to plead* or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise[.]" (Emphasis added.) If an answer is filed before the motion for default, it is virtually impossible for the moving party to establish that the other party "has failed to plead." The crucial time for determining whether a party has in fact failed to plead is at the time the motion for default is filed. Although it is true that a party may be defaulted for otherwise failing to comply with the trial rules, the fact that TR. 55(A) uses the phrase "failed to plead" indicates that any answer filed before the motion for default is sufficient to avoid default. This is true even though the answer is untimely filed pursuant to TR. 6.

This interpretation of TR. 55 does no harm to the provisions of TR. 6. Trial Rule 6(B), providing for enlargement of time, would continue to be of major importance. A party could continue to request an enlargement of time either prior, or subsequent, to the expiration of a time limitation. This would assure a party that a motion for default could not be granted. A party may forego this procedure however and thereby assume the risk that the opposing party will file a motion for default at the earliest possible time.

One of the primary objectives behind the promulgation of TR. 55 was to allow for the enforcement of a timely litigation process for the purpose of avoiding procedural delay. *Payne v. Doss* (1976), 170 Ind.App. 652, 354 N.E.2d 346. In view of the fact that the motions for default were not filed until 31 days after the answers were filed, together with the fact that the Bank's motions for summary judgment, which were totally unrelated to the failure to timely file answers, were pending when the answers were filed, it is obvious that the untimely answers were not responsible for any such delay. The late filings were therefore harmless. In light of the "marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations[,]" (footnotes and citation omitted), *Green v. Karol* (1976), 168 Ind.App. 467, at

473, 344 N.E.2d 106, at 110, the trial court committed reversible error in striking Harris's answers and counterclaims and entering default judgments in favor of the Bank.

For the above reasons this case is reversed and remanded for a decision on the merits.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion because: it ignores the clear and unmistakable language of Trial Rule 6(B)(2); it creates a new trial rule which frustrates and circumvents the obvious purpose and scheme of the trial rules—to expedite litigation and to allow the trial judge to manage the caseload of the court in fairness to all litigants; and it perpetuates a bifurcated disparity in the application of Trial Rule 55 which should not exist.

The clear and unmistakable language of Trial Rule 6(B)(2) expressly excludes any manipulation by litigants of time constraints set forth in the rules. It provides that only in the discretion of the trial court can any enlargement of time be allowed for the doing of a required act, and it restricts even this discretion of the trial court under Rules 50(A), 52(B), 59(C), and 60(B). Trial Rule 6(B)(2) reads as follows:

"(B) Enlargement. When an act is required or allowed to be done at or within a specified time by these rules, the court may at any time for cause shown:

\*    \*    \*    \*    \*    \*

"(2) *upon motion made after the expiration of the specified period*, permit the act to be done *where the failure to act was the result of excusable neglect*; but, the court may not extend the time for taking any action for judgment on the evidence under Rule 50(A), amendment of findings and judgment under Rule 52(B), to correct errors under Rule 59(C), or to obtain relief from final judgment under Rule 60(B), except to the extent and under the conditions stated in those rules." (emphasis added.)

Under Trial Rule 6(C), Harris was required to act by November 27, 1979. He did not request an enlargement of time from the trial court to act until March 7, 1980. The trial court did not abuse its discretion by denying an enlargement of time to Harris, since he did not demonstrate any "excusable neglect". The Majority Opinion would allow Harris to manipulate the Trial Rules and to manipulate the timely disposition of pending litigation by the trial court. The Majority Opinion allows a tardy litigant to ignore the clear and unmistakable language of Trial Rule 6(B)(2).

A new trial rule has been created by the Majority Opinion. Trial Rule 6(B)(2) has for all practical purposes been amended. This new amended trial rule frustrates and circumvents the obvious purpose and the inherent scheme of the trial rules. Any attempt to expedite pending litigation is frustrated by permitting a litigant to delay his responsive pleading as long as he dares without any fear of sanction from the trial court; this is true because the trial court has no control over the responsiveness of a litigant. The Majority's Amended Rule encourages litigants to negotiate and to delay litigation after an action has been filed in the trial court which results in a sudden surge of intense litigation in the trial court when those negotiations break down. Furthermore, a failure to file a responsive pleading within the twenty days without leave as provided by Trial Rule 6(C) and 6(B)(2) may well add to further litigation at trial and on appeal as it has done in the present case.

The Majority's Amended Rule circumvents the orderly scheme of the Trial Rules to move litigation along in the trial courts and to give all litigants who have filed an action in court a reasonable opportunity to be heard. The inherent scheme of the Trial Rules gives litigants a degree of certainty that their action will be heard by the trial court if certain procedures are followed and that some litigants will not be given an unfair advantage over others by being permitted to ignore or manipulate the Trial

Rules. The Majority's Amended Rule not only permits unfair advantages to procrastinating litigants, but it strips from the trial judge a very essential tool in controlling his caseload. A trial judge's discretion has been destroyed to deny motions which prolong litigation where no excusable neglect exists.

In the Majority Opinion's attempt to justify its interpretation of Trial Rule 55, it indulges in a superficial and specious rationale which contains the theme of harmlessness. This rationale begins with identifying the "crucial time for determining whether a party has in fact failed to plead." The "crucial time . . . is at the time the motion for default is filed." This time identification is gleaned from the words "failed to plead" in Trial Rule 55(A). These words, urges the Majority, "indicates that any answer filed before the motion for default is sufficient to avoid default. This is true even though the answer is untimely filed pursuant to TR. 6." The reason that this interpretation of Trial Rule 55 "does no harm for enlargement provisions of TR. 6" is because "Trial Rule 6(B), providing for enlargement of time, would continue to be of major importance. A party could continue to request an enlargement of time either prior, or subsequent, to the expiration of a time limitation. This would assure a party that a motion for default could not be granted."

This rationale is superficial and specious for several reasons. First, the "crucial time" to plead under the Trial Rules is clearly set forth in Trial Rule 6(C) which provides: "A responsive pleading required under these rules, shall be served within twenty (20) days after service of the prior pleadings." This is the "crucial time" to plead an answer not anytime before a motion for default is filed. Secondly, a motion for an enlargement of time by a party would not constitute a *"pleading"* under Trial Rule 55. Trial Rule 7 states clearly and distinctly that pleadings shall consist of: "(1) a complaint and answer; (2) a reply to a denominated counterclaim; (3) an answer to a cross-claim; (4) a third-party complaint, if a person not an original party

is summoned under the provisions of Rule 14; and (5) a third-party answer. *No other pleadings shall be allowed ;*" therefore, the motion for an enlargement of time would not be a pleading as the Majority Opinion assumes. Thirdly, under the rationale of the Majority Opinion, its "interpretation of TR. 55 does no harm for the enlargement provisions of TR. 6." Under its interpretation, Trial Rule 6(B)(2) is destroyed since the time to respond has been changed from twenty days from the prior pleading to prior to the filing of a motion for default. Again, the theme of "harmless" is used to circumvent the clear, unmistakable language of the Trial Rules. The Majority Opinion reasons: "In view of the fact that the motions for default were not filed until 31 days after the answers were filed, together with the fact that the Bank's motions for summary judgment, which were totally unrelated to the failure to timely file answers, were pending when the answers were filed, it is obvious that the untimely answers were not responsible for any such delay. The late filings were therefore harmless." This is a weak equity argument which has no place in the rationale of whether a trial judge abuses his discretion when enforcing the clear, unmistakable mandate of a Trial Rule, Trial Rule 6(B)(2) and 6(C).

The Majority Opinion perpetuates a bifurcated approach to the Rules which creates a disparity in the application of the Rules. I do not agree with the Majority that *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834, a Second District Opinion, was overruled by a First District Opinion in *Clark Co. St. Bank v. Bennett et al.* (1975), 166 Ind.App. 471, 336 N.E.2d 663; I do not agree with the Majority that the issue in *Hiatt* and *Clark* is "totally distinct from" the issue before us. *Hiatt* gave immunity to the tardy, "nimble" litigants in the Second District who could plead within the three day period while *Clark* snatched the immunity away from those tardy "nimble" litigants in the First District.

The issue before us is much broader than the Majority's proposal. The issue is

whether the clear, unmistakable time restraints of Trial Rule 6(C) can be manipulated by a litigant so that the Rule becomes meaningless or whether the trial court has discretion to give relief from the time restraints of the Rule in some instances and enforce the Rule in other instances in its efforts to manage the flow of litigation. I conclude that the trial court has discretion to enforce the Rule. Unless Harris can show that the trial court abused its discretion when it enforced Rule 6(C) against him, the judgment of the trial court should be affirmed.

If a litigant can manipulate the clear, unmistakable time restraints of Trial Rule 6(C), an unmanageable bottleneck will be created in the flow of litigation through our trial courts. The appeal before us is not in a common procedural posture. After an action has been filed by the plaintiff's attorney and an appearance has been entered by the defendant's attorney, the option of moving for a default judgment because a responsive pleading has not been filed is usually not considered. There are several reasons for the plaintiff's attorney's removal of this option from his consideration. First, the attorney who filed the action assumes that moving his newly filed action through the trial court is largely up to him and not the trial judge. He and not the trial judge will grant the defendant's attorney additional time to comply with the Trial Rules. He can do this by simply not objecting to the late response of the defendant's attorney or by not filing a motion for a default judgment. Secondly, the attorney who filed the action may consider the moving for a default judgment unprofessional when a fellow attorney has entered an appearance and is willing to represent the defendant. Default judgments are usually taken when no one makes an appearance for the defendant or makes any overtures to resolve the dispute on the merits. Thirdly, the attorney who files the action does not usually move for a default judgment since such a motion has derogatory connotations attached to it, and it is certainly not a motion which will endear fellow attorneys with whom the filing attorney will have

many cases in the future. Therefore, it is unusual for an attorney to move for a default judgment against another attorney simply because he has not filed a responsive pleading within twenty days under Trial Rule 6(C).

If the attorney filing the action rather than the trial judge decides when a responsive pleading should be filed under TR. 6(C), a bottleneck in the flow of litigation is certain to develop in our trial courts. Trial Rule 6(C) has a clear, distinct purpose—to start moving litigation through the trial court for a final determination—not to encourage an unmanageable accumulation of cases on the dockets of our courts or to mire down and impede litigation in the initial stages. Trial Rule 6(C) and 6(B)(2) give the trial judge some opportunity to manage the litigation in his court. The Majority Opinion takes this opportunity away.

I would affirm the judgment of the trial court.