SEARS ROEBUCK AND COMPANY,
Appellant–Defendant,

v.

Michael C. SOJA, a Minor by his Mother and Next Best Friend, Vicky JAMES, and Vicky James, Individually, Appellees–Plaintiffs.

No. 71A03–1002–CT–104.

Court of Appeals of Indiana.

Aug. 12, 2010.

Michael G. Getty, Rori L. Goldman, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for Appellant.

Richard W. Morgan, Douglas E. Sakaguchi, Pfeifer Morgan & Stesiak, South Bend, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Sears Roebuck and Company (Sears), appeals the trial court's Order refusing to set aside a default judgment entered in favor of Appellees–Plaintiffs, Michael C. Soja, a Minor by His Mother and Next Best Friend, Vicky James, and Vicky James Individually (collectively, James) on James' Complaint asserting product liability and negligence against Sears.

We affirm.

### ISSUES

Sears presents two issues on appeal which we restate as follows:

(1) Whether the trial court abused its discretion when it refused to set aside a default judgment based on excusable neglect due to a breakdown in communication; and

(2) Whether James' counsel's conduct mandated a setting aside of the default judgment in accordance with Indiana Trial Rule 60(B)(3).

### FACTS AND PROCEDURAL HISTORY

On October 11, 2005, eleven-year-old Michael Soja (Michael) fell from a Razor Electric Scooter and injured his arm. Because of this accident, Michael's mother, Vicky James filed a Complaint against Sears and Razor on June 5, 2007, alleging that Razor defectively manufactured and designed the scooter and that Sears negligently sold and distributed the scooter. On June 12, 2007, the Complaint was served on Sears' registered agent. The Complaint was forwarded to the Sears Legal Department and then to Sedgwick CMS (Sedgwick), Sears' third-party administrator, where the case was assigned to claims examiner, Nancy Hall (Hall). Hall is a level three claims examiner and handles solely litigation files.

On June 19, 2007, after having received the Complaint, Hall contacted Richard Morgan (Morgan), James' counsel. She informed him that she was the third-party administrator for Sears and in charge of the claim filed against the company. In turn, Morgan clarified the factual basis for the claim. No other communications occurred between Hall and Morgan during these proceedings.

Also that same day, Hall contacted John Cochrane (Cochrane), general counsel for Razor, and requested that Razor defend and indemnify Sears in the lawsuit, as required under the terms of the Universal Terms and Conditions (UTC), which exists between the two companies. During their conversation, Cochrane informed Hall that he was aware of the lawsuit as he had received a demand package from James' counsel in June of 2006. He also acknowledged Razor's obligation under the UTC and told Hall that Razor had already appointed an attorney, John Obenchain (Obenchain), to defend both Razor and Sears in the litigation. Pursuant to the UTC, Sears was not required to send Cochrane a written notice; nevertheless, the evidence reflects that Cochrane waited to receive a written tender from Hall con-

firming Razor's duty to defend Sears. Because Hall never sent a written confirmation, Cochrane did not instruct Obenchain to appear for Sears.

On January 31, 2008, Hall sent an email to Cochrane inquiring into the status of the suit. Because she used an incorrect email address, Hall never received a response. On April 30, 2008, Hall sent a second email to Cochrane, again to an incorrect email address. On May 30, 2008, Hall left a voice mail for Cochrane requesting information on the status of the suit but he did not return her phone call. Later that same day, Hall contacted Obenchain, the attorney appointed by Razor. During the conversation, Obenchain told Hall that he was never instructed to appear for and represent Sears and that, by now, Sears had been defaulted by the trial court. When Hall tried to confirm Obenchain's information, she learned that Cochrane had not requested Obenchain to appear for Sears because Cochrane had not received a written notice of tender from Hall.

Procedurally, after a Complaint was filed on June 5, 2007, Obenchain appeared for Razor on June 21, 2007. On October 8, 2007, the trial court entered a Default Order against Sears. On November 8, 2007, after conducting a damages hearing, the trial court entered judgment against Sears in the amount of $107,000 in damages. On July 7, 2008, after being advised of the default judgment, Hall retained counsel for Sears who filed a motion to set aside the trial court's Default Order. On August 8, 2008, the trial court issued an order allowing James to conduct discovery prior to James filing their response to Sears' motion to set aside. On December 28, 2009, James filed their response. Thereafter, on January 25, 2010, the trial court conducted a hearing on Sears' motion to set aside the default judgment which the trial court denied the same day.

Sears now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Excusable Neglect*

Sears contends that the trial court abused its discretion when it failed to set aside the default judgment based on excusable neglect. Specifically, Sears maintains that after receiving explicit representations from Cochrane that he had retained counsel to defend Sears, Hall had a reasonable belief that she had done everything necessary to protect Sears' interests in this lawsuit. A breakdown in communication then occurred when Cochrane failed to instruct Obenchain to appear for and defend Sears, believing that he would receive written confirmation of tender from Hall. On the other hand, James argues that the breakdown in communication amounts to a mere neglect, not an excusable neglect. As such, the default judgment should not be set aside.

▬ Pursuant to Indiana's trial rules, once entered, a default judgment may be set aside because of mistake, surprise, or excusable neglect so long as the motion to set aside the default judgment is entered not more than one year after the judgment and the moving party also alleges a meritorious claim or defense. Ind. Trial Rule 55(C); 60(B). When deciding whether or not a default judgment may be set aside because of excusable neglect, the trial court must consider the unique factual background of each case because "no fixed rules or standards have been established as the circumstances of no two cases are alike." *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332, 340 (Ind.1983) (quoting *Grecco v. Campbell,* 179 Ind.App. 530, 386 N.E.2d 960, 961 (Ind.App.1979)). Though

the trial court should do what is "just" in light of the facts of the individual cases, that discretion should be exercised in light of the disfavor in which default judgments are held. *Allstate Ins. Co. v. Watson,* 747 N.E.2d 545, 547 (Ind.2001). On appeal, a trial court's decision to set aside a default judgment is entitled to deference and is reviewed for an abuse of discretion. *Smith v. Johnston,* 711 N.E.2d 1259, 1262 (Ind.1999). Any doubt of the propriety of a default judgment should be resolved in favor of the defaulted party. *Green v. Karol,* 168 Ind.App. 467, 344 N.E.2d 106, 111 (Ind.App.1976). Although a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation, in Indiana there is a marked judicial deference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. *Charnas v. Estate of Loizos,* 822 N.E.2d 181, 185 (Ind.Ct.App.2005).

In several different cases with varied outcomes, our courts have confronted the propriety of setting aside default judgments when a defendant's insurer or insurance agent is notified but counsel fails to timely appear and answer. In *Boles v. Weidner,* 449 N.E.2d 288, 289 (Ind.1983), our supreme court affirmed a trial court's decision to set aside a default judgment, finding excusable neglect where the defendant passed the summons and complaint on to his independent insurance agent, to be forwarded on to the insurer. However, because of a breakdown in communication between the two insurance companies involved, the insurer never received notice of the suit. *Id.* at 290. The court held that "since the defendant did not hear from anyone, and had taken the steps expected of him, it certainly is reasonable for the trial court to find that there was excusable neglect, justifying setting aside the default judgment." *Id.* at 291.

In *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332, 334 (Ind.1983), the trial court refused to set aside a default judgment where the defendant had forwarded the suit papers to its insurance agent, who failed to get them to the proper insurance carrier on time. The evidence established that no reason was given by the insurance agent as to why the suit papers had remained in his office for a month without taking any action. *Id.* at 340. Our supreme court affirmed, observing that the trial court could have based a finding of excusable neglect or mistake upon the apparent misunderstanding between the defendant and its insurance agent but chose not to do so, and noting, "[m]ore significantly, under the evidence it was not compelled to do so." *Id.*

In *Whittaker v. Dail,* 584 N.E.2d 1084, 1087 (Ind.1992), the trial court refused to set aside a default judgment. The defendant had personally retained counsel that represented him during the three years the case was pending, but his lawyers were permitted to withdraw two months before trial because Whittaker had not paid their fees. *Id.* at 1085. Upon receiving notice of a pre-trial conference, he called his insurance company which, on his behalf, contacted a law firm, but the firm believed that it had been hired not to defend the defendant, but to file a declaratory judgment against him. *Id.* at 1086–87. The court noted that a breakdown of communication had occurred, giving rise to Whittaker's legitimately held belief that his insurance carrier would hire a lawyer to represent him. *Id.* at 1087. Analogizing to *Boles,* the supreme court recognized that not every breakdown in communication requires that a judgment be set aside;

nevertheless, the court held that where the unchallenged credible testimony established a breakdown in communication which results in a party's failure to appear for trial, the grounds for setting aside a judgment have been satisfied. *Id.* Noting that the case had been pending for three years and there was no evidence of the plaintiff's lack of diligence other than his disability to continue to pay his attorneys, the *Whittaker* court reversed the trial court and set aside the default judgment. *Id.*

Our supreme court further clarified the circumstances in which neglect can be excused in *Smith v. Johnston*, 711 N.E.2d 1259 (Ind.1999), a default judgment taken against a medical doctor. Smith, the doctor had been represented by counsel before the medical review panel. *Id.* at 1261. After the panel concluded that the doctor had failed to comply with the appropriate standard of care, Johnston's attorney sent a settlement demand letter to Smith's attorneys. *Id.* After a month passed with no response to the demand letter, Johnston filed a suit against Smith and served the doctor by certified mail at his place of business. *Id.* Although Smith's office manager would normally have received the summons and notified Smith's attorneys, the office manager was not in the office during the time the lawsuit was filed and default judgment entered. *Id.* Because the office manager was absent, the scrub nurse placed the summons on Smith's desk. *Id.* Smith did not see the summons until after the default judgment was entered. *Id.*

In determining that Smith's conduct was "neglect, but not excusable neglect," the supreme court stated

> Smith was aware that the person who normally handled legal mail was no longer doing that job. Nonetheless, Smith ignored his mail, including the sum-

monses and motion for default. We do not agree that the failure of Smith to read his mail amounts to a breakdown in communication sufficient to qualify as excusable neglect under Trial Rule 60(B)(1). Smith's case is distinguishable from our previous decisions finding excusable neglect for a breakdown in communication. In those cases the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in the failure to appear.... Here, Smith knew his mail was unattended and accepted the risk of adverse consequences. The judicial system simply cannot allow its processes to be stymied by simple inattention. There may be cases where a trial court will find excusable neglect based on similar omissions due to external pressures on a sympathetic defendant, but it was not an abuse of the trial court's discretion to refuse to do so here.

*Id.* at 1263.

Accordingly, in three of these four cases, *Boles, Siebert Oxidermo*, and *Smith*, the courts deferred to the decision of the trial court in ruling upon a motion to set aside a default judgment. And in *Whittaker*, the court found that the record unequivocally revealed facts that compel a finding of abuse of discretion. *See Whittaker*, 584 N.E.2d at 1087. To resolve the question of a trial court's potential abuse of discretion, the appropriate overriding issue according to our supreme court is not whether there has been a breakdown in communications but whether there is even slight evidence of excusable neglect. *See Coslett v. Weddle Bros. Const. Co., Inc.*, 798 N.E.2d 859, 862 (Ind.2003), *reh'g denied.*

■ Here, we cannot find any evidence of excusable neglect; rather Hall's conduct in handling the litigation amounted to simple inattention. After Cochrane informed

Hall that he was aware of the terms of the UPC and had appointed counsel to defend both Razor and Sears, Hall waited more than seven months to do any follow-up on the suit or even confirm that counsel had indeed appeared for Sears. Evidence presented at the hearing indicated that in accordance with Sedgwick's claims examiner's manual and guidebook, a written confirmation is required where a manufacturer—here, Razor—has accepted to defend Sears. Even if she could not get a written confirmation from Cochrane, she could have contacted Obenchain directly, ensuring that he had been instructed to appear for and defend Sears. Furthermore, pursuant to the manual, if no written confirmation could be secured, Hall should have brought the case to the attention of her supervisor. She failed to do so. In fact, Hall never discussed the file with her supervisor until after Sears had been defaulted.

Even though we agree that a miscommunication occurred between Hall and Cochrane early on in the proceedings, Hall's subsequent actions amounted to inattention. She did not do all that she was required to do and by failing to do so, Hall accepted the consequences. Specifically, not only did she neglect to follow Sedgwick's manual which would have alerted her to the fact that Sears was not represented by counsel, she also failed to monitor the case for seven months. Therefore, we do not conclude that the breakdown in communication resulted in excusable neglect. We affirm the trial court.

## II. *Counsel's Conduct*

Next, we need to decide whether James' counsel's conduct amounted to misconduct that justifies setting aside the default judgment in accordance with Ind. Trial Rule 60(B)(3). Sears maintains that because James' counsel was put on notice that Hall was Sears' administrator for the instant claim, counsel should have contacted Hall prior to seeking a default judgment.

▆▆▆ Indiana Trial Rule 60(B)(3) enables a court to grant relief from a default judgment for fraud, misrepresentation, or misconduct of an adverse party. A grant of relief under this rule is within the discretion of the trial court. *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind.2002). Our courts have held that "misconduct" under Ind. Trial Rule 60(B)(3) can be based on a violation of the Code of Professional Responsibility, even if the conduct at issue does not violate the rules of civil procedure. In *Smith v. Johnston*, 711 N.E.2d 1259 (Ind.1999), a medical malpractice case, counsel represented the doctor during the medical review panel stage but failed to enter an appearance and defend the suit after the filing of the civil complaint. *Id.* at 1261. Although Johnston's counsel knew that Smith had been represented during the panel review phase, she failed to provide notice to Smith's counsel of her intent to seek a default judgment in the civil proceeding. *Id.* Our supreme court held that "a default judgment obtained without communication to the defaulted party's attorney must be set aside where it is clear that the party obtaining the default knew of the attorney's representation of the defaulted party in that matter." *Id.* at 1262. Our supreme court based its holding on the Rules of Professional Conduct and clarified that

> The Rules are guidelines for lawyers and do not spell out every duty a lawyer owes to clients, the court, other members of the bar and the public. The preamble to the Rules is clear that '[t]he Rules, do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules.' Thus lawyers' duties are found not only in the specific

rules of conduct and rules of procedure, but also in courtesy, common sense and the constraints of our judicial system. As an officer of the Court, every lawyer must avoid compromising the integrity of his or her own reputation and that of the legal process itself. These considerations alone demand that [Johnston's counsel] take the relatively simple step of placing a phone call to [Smith's counsel] before seeking a default judgment. In addition, Rule 8.4(d) explicitly states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. The administration of justice requires that parties and their known lawyers be given notice of a lawsuit prior to seeking a default judgment. A default judgment is appropriate only where a party has not appeared in person or by counsel and, *if there is a lawyer known to represent the opposing party in the matter, counsel had made reasonable effort to contact that lawyer.*

*Id.* at 1263–64 (emphasis added).

■ Moreover, in order to successfully bring a claim for relief applying the misconduct provision of Ind. Trial Rule 60(B)(3), the movant is required to demonstrate that the misconduct "prevented the movant from fully and fairly presenting the movant's case at trial." *Outback Steakhouse of Florida, Inc. v. Markley,* 856 N.E.2d 65, 73 (Ind.2006).

■ Here, Hall is a claims adjuster, not an attorney. As such, *Smith's* holding does not apply to the cause before us and thus, under the Rules of Professional Conduct James' counsel was not required to notify Hall of his intent to pursue a default judgment. Even if we were to conclude that it would only be courteous for James' counsel to contact Hall prior to filing for a default judgment, a failure to do so would not, standing alone, justify the setting aside of the default judgment. It is clear that James' counsel's lack of notification to Hall of his intent to bring a default action alone is not responsible for the entry of the default judgment. Rather, the origin of the default action is Hall's inattention to monitor this cause after the first initial phone call with Cochrane and to let the case linger for seven months. Therefore, we find that the trial court did not abuse its discretion in refusing to set aside the default judgment.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Sears' request to set aside the default judgment entered in favor of James.

Affirmed.

BAILEY, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent from my colleagues' decision that the trial court did not abuse its discretion in its refusal to set aside the default.

Indiana courts have a long history of preferring to decide disputes on the merits of the controversies presented to them, not on procedural grounds. If the default entered against Sears is allowed to stand, this case will still go forward on the claim of the injured plaintiff and his mother against Razor, the manufacturer of the electric scooter. Discovery will still be conducted. Experts will still be retained. The issues giving rise to the claimed liability will or will not be proven. Neither the time frame, nor the expense of such litigation will be altered whether Sears is or is not a defendant on the merits of this claim. Setting aside the default as to Sears would

not prejudice Razor in any way, and the only prejudice to the plaintiffs would be that they would lose the ability to collect a judgment to which they may not be entitled on the merits of their claim.

Here, Sears was served with the complaint and summons on June 12, 2007. It acted with all dispatch. One week after receiving the complaint, the third-party claims administrator for Sears contacted both plaintiff's counsel and the general counsel for Razor, the product manufacturer contractually obligated to defend Sears. Razor's general counsel advised Sears' representative that he knew of the law suit and that Razor was contractually obligated to defend Sears. He also informed the claims administrator that Razor had already appointed an attorney to defend Razor and Sears in the litigation.

At this point, Sears had done all it was required to do under its contract with Razor. Sears no longer had an interest in the matter. I believe that Sears acted with due diligence. The subsequent default was the result of a breakdown of communications which we have held to constitute excusable neglect. I would reverse the decision of the trial court, vacate the entry of default, and allow this matter to go forward for a determination on its merits.