Edgar S. HUSTED and Husted and Husted, A Partnership, Appellants,

v.

Herman McCLOUD, Appellee.

No. 683S209.

Supreme Court of Indiana.

July 1, 1983.

Geoffrey Segar, Philip A. Whistler, Ice, Miller, Donadio & Ryan, Indianapolis, for appellants.

David A. Ault, Wernle, Ristine & Ayers, Crawfordsville, for appellee.

PIVARNIK, Justice.

This cause comes to us on a Petition to Transfer from the First District Court of Appeals. Appeal was brought to the Court of Appeals by Edgar Husted from that portion of a judgment of the Montgomery Circuit Court awarding Herman McCloud puni-

tive damages in an action involving the conversion of certain funds. The partnership of Husted & Husted also appealed contesting the award of punitive damages and compensatory damages as against itself. The Court of Appeals, 436 N.E.2d 341 affirmed the trial court in its award of punitive damages against Edgar Husted and in its award of punitive and compensatory damages against Husted & Husted. We now find that the award of punitive damages against Edgar Husted was improper. While the award of compensatory damages against the partnership was proper, we now find that the award of punitive damages was not. Transfer is granted and the opinion of the Court of Appeals is accordingly vacated.

The facts as set out by the Court of Appeals are as follows:

"Herman McCloud was the executor of his mother's estate. The firm of Husted and Husted was retained to act as attorneys for the estate. The partnership consisted of Selwyn and Edgar Husted. After the estate was closed, an Internal Revenue Service (IRS) audit and reappraisal of certain real estate resulted in an additional estate tax liability of $18,006.73. McCloud prepared a check payable to the IRS and a separate check for attorney fees. However, Edgar falsely represented that the exact amount of the tax liability was unknown. He instead took McCloud's check for $18,800.00, payable to the Husted and Husted Trust Account at Edgar's instance, and indicated that he would pay the liability upon exact determination and keep the remainder as his fee. There was no Husted and Husted Trust Account in existence. Edgar instead deposited the check into his own personal account and converted the funds to his own use.

Edgar Husted then induced officials of the First National Bank and Trust Company of Crawfordsville to issue a check from the estate of Walter Fletcher, deceased, in the exact amount needed to pay the additional estate tax liability on the estate of Maude McCloud. This check was credited to the McCloud estate

by the IRS. Edgar advised McCloud that the additional taxes had been paid and delivered to McCloud a cash register receipt and computer transcript which purported to show payment. Although McCloud repeatedly asked therefor, Edgar never returned the cancelled check.

In December of 1978, Edgar Husted's misconduct was uncovered. Edgar entered into a plea agreement with the Montgomery County Prosecutor in which Edgar agreed to plead guilty to three counts of theft and one count of forgery involving the handling of three estates (McCloud's was not one of them), made full disclosure of and to the clients who had suffered losses as a result of his actions, and tendered his resignation as an attorney to the Indiana Supreme Court. In exchange therefor, the prosecutor promised not to prosecute on any charges arising from Edgar's disclosures of misconduct in cases other than the three charged in the plea agreement.

The IRS subsequently revoked the satisfaction of the estate tax liability of the McCloud estate, reassessed the additional tax due, and also assessed additional interest of $2,795.24. An additional penalty of $3,034.35 was later dropped. McCloud then paid the additional tax due from his savings and a loan he procured for that purpose.

Edgar pleaded guilty to the four felony charges as agreed and was convicted and sentenced to prison. McCloud subsequently filed a damages action when restitution was not forthcoming."

In regard to the issue of punitive damages against Edgar Husted, we note the following. The written plea agreement between Edgar Husted and the county prosecutor states in part:

"(2) The Defendant was an attorney at law practicing in Crawfordsville, Indiana. The Defendant admits that, during the course of his law practice, he manipulated clients' funds for his own use. The Defendant has agreed to make full disclosure to the Prosecuting Attorney of the 22nd Judicial Circuit of any client who

has suffered monetary loss as a result of Defendant's actions as an attorney. The Defendant has disclosed the following clients and no others to the Prosecuting Attorney:

\* \* \* \* \* \*

(1) Estate of Maude McCloud

\* \* \* \* \* \*

(3) In return for full disclosure, the Prosecuting attorney of the 22nd Judicial Circuit has agreed to limit the number of criminal charges filed against Defendant to four (4) counts. One (1) count of forgery and three (3) counts of theft have been filed against Defendant, and no other criminal charge arising out of transactions involving the above clients and which Defendant has disclosed to the Prosecuting Attorney will be filed against Defendant.

\* \* \* \* \* \*

(7) The Defendant will enter pleas of guilty to one (1) count of forgery and three (3) counts of theft as charged in this Cause.

(8) The Prosecuting attorney agrees that any sentence imposed on Defendant by the Court shall run concurrently.

\* \* \* \* \* \*

(10) There has been no agreement as to execution of any prison sentence which the Court may impose. Both parties are free to make any recommendation to the Court that they wish."

At the plea proceeding and after having received the plea agreement, the trial court noted that the plea agreement made reference to other "matters" upon which the State would be foreclosed from filing additional charges if the trial court accepted the proffered pleas. During the prosecutor's subsequent cross-examination of Edgar Husted, the trial court heard about those other matters. Herman McCloud appeared before the trial court at the prosecutor's invitation and read a prepared statement which described Husted's theft from Mrs. McCloud's estate and made vaguely friendly recommendations conditioned upon arrangements for full restitution. The trial

court thereafter imposed an executed sentence of imprisonment.

The record in this case demonstrates that the prosecutor and the trial court deemed Husted's criminal handling of Mrs. McCloud's estate relevant to the court's final determination of Husted's sentence. The prosecutor invited Mr. McCloud to the plea proceeding and the trial court heard him. The prosecutor indicated to the trial court the aggregate amount of money stolen by Husted from his clients to demonstrate the extent of the harm which Husted had caused. The trial court did not select the least severe disposition possible. We conclude, therefore, that the McCloud theft served to enhance Husted's sentence. We deal here with what is referred to in the practice as a "clean up" plea. In a "clean up" plea, express concessions are made by the accused of past crimes, a record of these past crimes is made and the sentencing court considers said record in arriving at the appropriate sentence. No formal charges are lodged on the matters "cleaned up" but jeopardy attaches to them nevertheless and they are not left hanging over the defendant as he serves out his sentence.

■ On the foregoing basis, the punitive damage award against Edgar Husted should be set aside. The public interest in punishing Husted and in deterring him from such misconduct was fully satisfied by the sentence Husted received. Accordingly, punitive damages are inappropriate. *Taber v. Hutson*, (1854) 5 Ind. 322. The award of punitive damages against Edgar Husted is set aside.

The trial court relied upon the provisions of Indiana's Uniform Partnership Act, Ind. Code §§ 23–4–1–1 through 43 (Burns 1972), when it entered judgment against the partnership for both punitive and compensatory damages. The trial court particularly relied upon the following sections of the Uniform Partnership Act which state:

"23–4–1–13. Partnership bound by partner's wrongful act.—Where, by any wrongful act or omission of any partner acting in the ordinary course of the busi-

ness of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefore to the same extent as the partner so acting or omitting to act.

23–4–1–14. Partnership bound by partner's breach of trust.—The partnership is bound to make good the loss:

(a) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and

(b) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership."

 The trial court and the Court of Appeals determined that § 13 required that the partnership be liable to the same extent as Edgar Husted for any civil penalty imposed in this case. The partnership claims that Edgar's criminal acts were not within the ordinary course of partnership business. Furthermore, the partnership claims that it never had possession of the certain funds converted and therefore the partnership cannot be held liable for Edgar's acts with respect to said funds. There were two partners in the partnership law firm, Edgar Husted and Selwyn Husted, Edgar's father. McCloud clearly was a client of the partnership since McCloud dealt with both Selwyn and Edgar on his estate case. In fact, Selwyn was the partner who first brought McCloud's case into the partnership's office. Edgar was acting within the ordinary course of the partnership's business and with apparent authority since Edgar's request for and acceptance of money from McCloud to pay McCloud's estate tax liability was well within the work parameters of an attorney properly handling a decedent's estate. We therefore find that even though fraud and conversion of a client's funds are not part of the ordinary course of a law partnership's business, the trial court correctly found pursuant to § 14 that the part-

nership was responsible for partner Edgar in taking money entrusted to him and misapplying it. We also find that the trial court was justified in finding that McCloud's money was in the partnership's possession when it was in Edgar's possession since Edgar deviated from McCloud's plan and converted the money to his own use only after he received it in the ordinary course of the partnership's business. Accordingly, the trial court did not err by holding the partnership responsible to McCloud for compensatory damages.

Whether Appellant partnership is liable for punitive damages, however, is another story. Husted & Husted argues that the cases decided under § 13 or its counterpart in other jurisdictions as well as the earlier cases decided under the common law of agency and partnership have generally held that where a partnership is sued for a partner's intentional tort, the partnership's liability turns on whether the purpose or effect of the tortious act was to benefit the partnership's business or whether the tort was so removed from the ordinary course of that business that it could not be considered within the implicit authorization of the co-partners. Appellant partnership cites *Riley v. LaRocque*, (1937) 163 Misc. 423, 297 N.Y.S. 756, where a plaintiff sued a law partnership for the breach of trust committed by one of that firm's general partners. The defendant partner and another attorney handled the estate of the plaintiff's father. After the estate's assets were distributed, the defendant partner induced the plaintiff to "invest" his share of said assets with the firm. The defendant partner then signed a demand note against his firm to convert the plaintiff's funds to his own use. The New York court found that the unknowing and innocent partners were not liable for the personal misconduct of their co-partner. That court cited the well-settled principle of agency law that when an agent commits an independent fraud for his own benefit, he ceases to act as an agent for his principal. That court also indicated finding no purpose or intent to advance any partnership interest and that the misdeeds were not in the ordinary course of the part-

nership's business since a law firm is not in the usual business of investing people's money while handling their legal affairs. Appellant partnership also cites other jurisdictions that have reached the same result in cases dealing with intentional torts other than conversion. Those cases have held innocent co-partners not liable for the intentional torts of a defendant partner when committed out of purely personal motives or with no purpose or effect to benefit the partnership. *Wheeler v. Green,* (1979) 286 Or. 99, 593 P.2d 777 (defamation); *Kelsey-Seybold Clinic v. Maclay,* (Tex.1971) 466 S.W.2d 716, *reh. denied* (alienation of affections); *Vrabel v. Acri,* (1952) 156 Ohio St. 467, 103 N.E.2d 564 (battery); *Schloss v. Silverman,* (1937) 172 Md. 632, 192 A. 343 (battery).

We accept Appellant's contention that § 13 is the only section by which punitive damages can be imposed against a partnership since § 14 merely limits a partnership's liability to restitution. We further agree with Appellant partnership that the rationale behind punitive damages in Indiana prohibits awarding such damages against an individual who is personally innocent of any wrongdoing. Punitive damages are not intended to compensate a plaintiff but rather are intended to punish the wrongdoer and thereby deter others from engaging in similar conduct in the future. *School City of East Chicago v. East Chicago Federation of Teachers,* (1981) Ind. App., 422 N.E.2d 656, *trans. denied; Hoosier Insurance Co., Inc. v. Mangino,* (1981) Ind.App., 419 N.E.2d 978, *trans. denied; Nate v. Galloway,* (1980) Ind.App., 408 N.E.2d 1317, *trans. denied.* Accordingly, we now hold that the trial court erred by adjudging the innocent partner in this case responsible for punitive damages.

Transfer is granted, the opinion of the First District Court of Appeals is vacated and this cause is remanded to the trial court with instructions to enter judgment consistent with this opinion.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.