**Richard WHITTAKER,**
**Defendant–Appellant,**

v.

**Susan DAIL, Plaintiff–Appellee.**

No. 27A02–9007–CV–424.[1]

Court of Appeals of Indiana,
Fifth District.

March 4, 1991.

---

1. This case has been diverted to this office by the order of the Chief Judge.

Charles F. Robinson, Jr., Linda Y. Hammel, Yarling Robinson Hammel & Lamb, Indianapolis, for defendant-appellant.

P. Robert Dawalt, Jr., Marion, for plaintiff-appellee.

SHARPNACK, Judge.

Whittaker appeals from a judgment in favor of Dail and the denial of his motion for relief from that judgment under Ind. Trial Rule 60(B)(1). The judgment was for $99,423.90 in actual damages and $198,757.80 punitive damages. The judgment was entered after the court, without a jury, received evidence presented by Dail on the day the case had previously been set for trial by jury. Neither the defendant Whittaker nor any attorney representing him was present. We affirm.

Whittaker raises six issues, which we restate and arrange as follows:

1. Could the trial court enter the judgment for damages without having given the three day notice required by Trial Rule 55(B)?

2. Was the trial held prior to the entry of judgment required to be by jury?

3. Did the trial court abuse its discretion by denying defendant's motion for relief from judgment under Trial Rule 60(B)(1)?

4. Were the damages awarded as actual damages excessive?

5. Could punitive damages be awarded when the evidence showed that the defendant had already been convicted and punished criminally for his actions which were also the basis for the award of punitive damages?

6. Were the damages awarded as punitive damages excessive?

The facts pertinent to the appeal begin with an incident between Whittaker and Dail which occurred on June 21, 1987. On September 3, 1987, Whittaker pleaded guilty to the misdemeanor of battery charged in connection with the incident. He was fined $1.00 and costs, given a sixty

(60) day suspended sentence, and placed on probation for one year on condition that he stay away from Dail. Dail, on September 3, 1987, filed her complaint in this case alleging injuries caused by Whittaker and praying for actual and punitive damages.

A succession of attorneys represented Whittaker, appearing and subsequently withdrawing primarily for economic reasons. Even so, discovery was had, depositions were taken, summary judgment motions were made and denied, and Dail was examined at Whittaker's behest by a psychiatrist and a therapist in connection with her claimed injuries.

The last of Whittaker's attorneys withdrew their appearance on January 31, 1990. The case had been set, on January 8, for trial on March 5, 1990. Whittaker was aware of that setting. On February 21, 1990, the court set the case for a pre-trial conference on February 28, 1990. It is not clear whether a notice of this pre-trial was sent to Whittaker himself. As of February 21, 1990, there was no appearance of any attorney on file for him. On February 28, 1990, Whittaker did not appear at the pre-trial conference and the judge called Whittaker and told him that the case was set for trial on Monday, March 5, 1990. In that conversation, Whittaker said he thought he had an attorney, but could not remember his name. At the pre-trial conference the attorneys for Dail waived trial by jury.

On March 5, 1990, neither Whittaker nor any attorney representing him was present at the time set for the trial to commence. The trial judge indicated that he was defaulting Whittaker and the case proceeded with the court receiving evidence as to the events which occurred on July 27, 1987, and the injuries sustained by the plaintiff and the effect of the events and the injuries upon her. On March 5, 1990, he entered the following judgment:

Comes now the Plaintiff and Defendant fails to appear and is defaulted herein. This matter being set for trial on March 5, 1990, at 9:00 A.M.

Evidence is heard and the Court being duly advised in the premises makes the following finds [sic] of fact, to-wit:

1. That Defendant, Richard Whitaker, did willfully and maliciously injure Plaintiff by striking her.

2. That as a result, Plaintiff suffered extreme psychological and emotional injuries.

3. That the Court assesses actual damages of and from Defendant in the sum of $99,423.90.

4. That the Court assesses Punitive Damages of and from Defendant in the sum of $198,757.80.

That there is due from Defendant to the Plaintiff the sum of $298,181.70 plus Court costs in the sum of $55.00.

IT IS THEREFORE CONSIDERED AND ADJUDGED, by the Court that Plaintiff recover of said Defendant the sum of $298,181.70 together with costs in the amount of $55.00.

(Record, 158)

On March 9, 1990, attorney Robinson appeared for Whittaker and filed a motion to set aside default judgment supported by affidavits which indicated in substance that attorney Robinson had been contacted on February 22, 1990, by Ms. Craft, a senior casualty claim representative of Allstate Insurance Company, regarding the claim of Susan Dail against Whittaker, and that they discussed possible coverage defenses available to Allstate on its home owners policy with Whittaker. Attorney Robinson was under the impression that what Ms. Craft wanted from him was the filing of a declaratory judgment action on behalf of Allstate with regard to its policy coverage defenses. He was not made aware that Allstate had intended for him to take on the defense of Whittaker until he was informed of the default judgment taken against Whittaker on March 8, 1990. Ms. Craft indicated that Allstate first received notice of the claim against Whittaker on February 16, 1990, and that she addressed to Whittaker a reservation of rights letter on February 20, 1990. She indicated that she also spoke to Whittaker on February 20, 1990, at which time she was told by him that there was a trial scheduled in the Grant Circuit Court for March 5, 1990. On March 29, 1990, attorney Robinson filed a

motion to correct error on the ground that the damages awarded were excessive.

On May 1, 1990, the court held a hearing on the motions to set aside default judgment and to correct error. At that hearing testimony was received from Whittaker, Ms. Craft and attorney Robinson. On May 3, 1990, the court denied the motion to set aside judgment and the motion to correct errors. Other facts pertinent to the appeal will be supplied as we go along.

■ Resolution of the issue as to whether the trial court was required to give a three day notice to Whittaker before a judgment could be entered against him turns on an analysis of the proceedings in the trial court. Trial Rule 55(B) provides that, "If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application." If the proceeding below that led to the judgment was a proceeding to obtain a default judgment, three days notice was required. *Horsley v. Lewis* (1983), Ind.App., 448 N.E.2d 41, 43. A defendant who has not been properly defaulted is entitled to a trial on the merits on the case as to liability and damages without regard to whether or not he is present at that trial. *Pinkston v. Livingston* (1990), Ind.App., 554 N.E.2d 1173; *Hampton v. Douglass* (1983), Ind. App., 457 N.E.2d 618; *Aetna Securities Co. v. Sickels* (1949), 120 Ind.App. 300, 88 N.E.2d 789; *Indiana State Board of Medical Registration and Examination v. Pickard* (1931), 93 Ind.App. 171, 177 N.E. 870.

Whittaker relies on *Horsley* and *Pinkston* to support his argument that the court erred in not giving the three day notice required by Trial Rule 55. In *Horsley* the attorney for the defendant, after having filed an answer denying the allegations of the plaintiffs' complaint, withdrew his appearance. No other attorney appeared for the defendant, and the plaintiffs moved for a default of defendant on the apparent theory that the withdrawal by his counsel had the effect of withdrawing the answer that had been filed by his counsel and that, therefore, the defendant was in default by not having filed an answer to the complaint. On the same date the application for default was filed, and without any notice to the defendant, the court entered default. The court of appeals reversed and ordered the vacation of the default judgment on the sole ground that the court had failed to give the three day notice and hold a hearing on the application for default as required by Trial Rule 55(B). Judge Neal concluded the opinion: "[w]e hold that where counsel appears and files a responsive pleading, and then withdraws his appearance, the litigant for purposes of T.R. 55(B) has appeared and notice of default is required." *Horsley*, 448 N.E.2d at 43. It does not appear in *Horsley* that any trial was ever held on the issue of liability of the defendant.

In *Pinkston* the defendant was not present in court on the day set for trial. On that day, the trial court entered a default judgment against her and some months later held a hearing on damages and entered judgment against the defendant, who again was not present. There was no trial on the issue of liability. The court of appeals, in reversing the denial of a Trial Rule 60(B) motion, included in its rationale a consideration of the manner in which the default judgment had been made, as follows:

Finally, there is another reason for reversal not specifically raised by Pinkston, and, therefore, arguably waived. Nevertheless, we cannot allow the trial court's procedure in entering the default judgment to pass without comment. In *Horsley v. Lewis* (1983), Ind.App., 448 N.E.2d 41, we held that when defense counsel has appeared, filed responsive pleadings and withdrawn, the defendant is entitled to three days notice of default pursuant to Ind.Trial Rule 55(B). Here, the record does not reveal that Livingston applied for default judgment, and Pinkston was given no notice of an application for default judgment. Instead the trial court entered the default judgment on the

same day Pinkston failed to appear for trial. This was an obvious error.

In addition, in *Hampton v. Douglass* (1983), Ind.App., 457 N.E.2d 618, we held that when the defendant has filed a responsive pleading, a default judgment is improper, even if the defendant fails to appear for trial. As we explained:

> A default occurs when a party fails to appear in response to process or, having appeared, fails to obey a rule to answer and thereby confesses the allegations of the pleading. Judgment is then rendered without the trial of any issue of law or fact. *Fisk v. Baker*, 1874, 47 Ind. 534. *Obviously where an issue of fact is pending between the parties there can be no judgment on default even though the defendant is absent at the time fixed for trial.* Under such circumstances however the court may proceed to hear the plaintiff's evidence in the same manner as though the defendant were present and, if a prima facie case is established, may render appropriate judgment. *Indiana State Board of Medical Registration v Pickard*, 1931, 93 Ind.App. 171, 177 N.E. 870.

*Id.* at 619. (quoting *Aetna Securities Co. v. Sickels* (1949), 120 Ind.App. 300, 88 N.E.2d 789, 792–93.) Thus when a defendant fails to appear for trial the trial court may hear evidence, and, if the plaintiff establishes a prima facie case, enter judgment for the plaintiff. Such a judgment is on the merits. *Id.* See also *Ed Martin Ford Co. v. Martin* (1977), 173 Ind.App. 428, 363 N.E.2d 1292; *Aetna Securities Co., supra.*

Here, the trial court heard no evidence before entering a default judgment. The entry of a default judgment was improper. (emphasis supplied in *Hampton* )

*Pinkston*, 554 N.E.2d at 1176–77.

In the *Hampton* case cited by the court of appeals in *Pinkston*, the defendant in a paternity action did not appear at the time set for trial. His attorney had previously withdrawn and no answer to the petition to establish paternity had ever been filed. The trial court granted a motion for default

made by the petitioner on the trial date and, without hearing any evidence on the issue of paternity, took evidence on support, child care and prenatal expenses and made an award. The court of appeals in considering an appeal from the denial of a Trial Rule 60(B)(1) motion concluded that the petitioner had been entitled to no judgment at all. The court of appeals noted that no answer is required of a defendant in a paternity action and that the defendant, by not having filed an answer, was not in default; the withdrawal of his attorney had no effect on the matter; and that:

> [T]he Mother's petition still remained at issue, and a default by reason of Hampton's absence at trial was incorrect.

> The conclusion does not intimate that Hampton can prolong the litigation simply by failing to appear. Mother still has recourse to judgment on the merits, but in order to so recover, *she must present evidence* to establish a prima facie case of Hampton's paternity. [citations omitted] Mother did not do so here so judgment in any form was inappropriate, particularly because her own petition raised a presumption that her husband, Douglass, was the father, not Hampton.

*Hampton*, 457 N.E.2d at 620 (original emphasis).

In *Aetna*, a trial was held in the absence of the defendant whose counsel had, in effect, withdrawn after an earlier judgment had been reversed on appeal as to the defendants. The defendants brought an action for relief from the judgment upon learning about it some five years after its entry when an execution was issued. The defendants argued that the judgment entered against them was a default judgment and that it was not properly entered where they had an answer on file and the case was at issue and that the withdrawal of their attorneys had not been consummated by a formal withdrawal of record. The court responded: "We find authority for the proposition that mere leave to withdraw an appearance, not consummated by actual withdrawal, is ineffective for any purpose [citation omitted], and if the judgment of September 27, 1943, was, in truth, a default judgment it is a nullity." *Aetna,*

120 Ind.App. at 308–309, 88 N.E.2d at 782. The court continued with the language set out in the quotation from *Pinkston* above (citing *Pickard*) and concluded that the proceedings below had constituted a trial as though the defendant were present and the judgment had not been taken on default.

Finally, in *Pickard* the court faced the issue of whether or not the proceedings in the trial court led to a default judgment or constituted a judgment entered after trial so that the motion for new trial on which the appeal was based was the proper procedure as opposed to a motion to set aside a default judgment. The court concluded that the judgment below resulted from a trial and was not a default judgment so that the motion for a new trial was the proper procedure. The court cited the case of *Firestone v. Firestone* (1881) 78 Ind. 535 and quoted from that case as follows: "It is the general rule, that where a defendant's answers to the complaint are standing, judgment cannot be entered against him by default. In such a case, the proper course is to call the defendant and submit the cause to the court for trial." *Pickard*, 177 N.E. at 872.

■■■ A study of these cases leads to the conclusion that where a defendant is not present at trial and the trial is on the issues of both liability and damages, the judgment resulting from it is not a default judgment but is a judgment following trial on the merits. We would observe, further, that a defendant is under no duty to attend a trial, and absence would not be a "failure to plead or otherwise comply with these rules" which would permit default under Trial Rule 55.

In determining what occurred in the trial below, we look to the transcript of the trial on March 5, 1990, and we find the following colloquy between the court and counsel for plaintiff:

BY THE COURT

THIS IS CIVIL DOCKET 27C01–8709–CP–783, State of Indiana or pardon me—Susan Dail VS Richard Whitaker. The Plaintiff, Susan Dail is present this morning with her attorney, Mr. Dawalt.

Defendant Richard Whitaker is not present, he's been called in open Court and in the hallways, the Court is aware that Mr. Whitaker, the Defendant is personally aware of the time scheduled for trial this morning because at a Pre-trial Conference held last week the Defendant failed to appear and the Court telephoned the Defendant and personally advised him the cause was set for trial this morning and he has, in fact, failed to appear. The Plaintiff has waived jury trial, so at this time we will proceed to trial to the Court. Mr. Dawalt, I assume you have the Motion for Default to offer, is that correct?

BY MR. ROB DAWALT

Well, yes, your Honor, I do want to proceed with some evidence though in order to show that we were in Court and proceeded with the trial, if that's all right.

BY THE COURT

O.K. What I—what I will do at this time is enter a default against the defendant, Richard Whitaker and we will proceed to trial on the issue of the damages.

(Record, 206–207).

The trial proceeded from that point and evidence was introduced both on the issues of liability and damages. The evidence regarding liability consisted of the plea of guilty to the criminal charge, a brief description of the events by Dail and photographs of the bruises inflicted upon her by the assault she described. This evidence, while not in great detail, is more than adequate to make a prima facie case.

That same day the court made an order book entry as follows:

Comes now Plaintiff, by counsel, and files Verified Motion for Proceedings Supplemental. Order to Appear in Court on April 6, 1990 at 9:00 A.M. filed (H.I.) Order to Answer Interrogatories and Interrogatories filed (H.I.) Notice to Bank of Garnishment Proceedings and Order to Answer Interrogatories filed (H.I.). Plaintiff appears in person and by counsel. Defendant fails to appear. Cause submitted for trial to the Court. Counsel for Plaintiff makes oral Motion for Default of Defendant. Motion granted and

Defendant is now defaulted. Cause submitted for evidence on issue of damages. Evidence presented. The Court having reviewed the evidence and exhibits introduced into evidence as well as the evidentiary depositions, the Court now finds in favor of Plaintiff Susan Dail and against Defendant Richard Whitaker and assesses actual damages in favor of Plaintiff in the Sum of $99,423.90 and punitive damages of $198,757.80 for a total judgment in favor of Plaintiff and against Defendant Richard Whitaker in the sum of $298,181.70. Judgment on the findings. Cause ordered to outfile.

(Record, 151)

The court also signed and there was filed that day the following judgment:

Comes now the Plaintiff and Defendant fails to appear and is defaulted herein. This matter being set for trial on March 5, 1990, at 9:00 A.M.

Evidence is heard and the Court being duly advised in the premises makes the following finds [sic] of fact, to-wit:

1. That Defendant, Richard Whitaker, did willfully and maliciously injure Plaintiff by striking her.

2. That as a result, Plaintiff suffered extreme psychological and emotional injuries.

3. That the Court assesses actual damages of and from Defendant in the sum of $99,423.90.

4. That the Court assesses Punitive Damages of and from Defendant in the sum of $198,757.80.

That there is due from Defendant to the Plaintiff the sum of $298,181.70 plus Court costs in the sum of $55.00.

IT IS THEREFORE CONSIDERED AND ADJUDGED, by the Court that Plaintiff recover of said Defendant the sum of $298,181.70 together with costs in the amount of $55.00.

(Record, 158)

■ From our examination of the cases discussed above and the record, we are of the opinion that what occurred on the day of trial was that a trial was held, in the absence of the defendant, in which evidence was received on the issues of liability and damages and that the judgment was entered on that evidence. The characterization of the proceeding by the court as a default proceeding does not alter the fact that evidence was received on liability which was adequate to support the court's finding that Whittaker had maliciously injured Dail by striking her. We conclude that the judgment was not a default judgment and that no three day notice pursuant to Trial Rule 55(B) was required.

We come next to the issue posed by Whittaker's claim that he was deprived of his right to trial by jury. It is true, as he contends, that a jury demand was made by the plaintiff at the time the complaint was filed and that defendant at no time thereafter agreed to waive jury trial. Plaintiff did, at the pre-trial conference held prior to the trial, waive trial by jury. As Whittaker argues, Trial Rule 38(D) provides that "a demand for trial by jury made as herein provided may not be withdrawn without the consent of the other party...." Whittaker concedes that Trial Rule 38(D) also provides "a failure of a party to appear at the trial ... constitute[s] waiver by him of trial by jury." He contends, however, that the case of *Graham v. Schreifer* (1984), Ind.App., 467 N.E.2d 800 is support for the proposition that he did not waive his right to trial by jury.

■ As Whittaker argues, and the court in *Graham* recognized, the right to a trial by jury in civil cases is found in the Indiana Constitution, Article I Section 20. The making of reasonable regulations of the method of enjoyment of the right to a jury trial does not constitute a denial or impairment of that right. *Hayworth v. Bromwell* (1959), 239 Ind. 430, 436, 158 N.E.2d 285, 287. The supreme court can provide methods of waiving the right provided those methods expedite the decision of cases. *Id.* 239 Ind. at 437, 158 N.E.2d at 287; *See also* I.C. 34–5–2–1. In *Hayworth*, the court found that former supreme court rule 1–8A providing for waiver if a jury trial was not requested within 10 days after closure of the issues did not impair the constitutional right. We hold that T.R. 38(D)'s waiver provision for failure to appear at trial does not impair the substance of the right to a jury trial embodied in

Article 1 Section 20 of the Indiana Constitution.

In *Graham,* the court had already concluded that it was going to reverse the trial court's denial of a T.R. 60(B) motion on the basis that:

> The unrefuted evidence presented by Schreifer indicates he had received no notice of his attorney's withdrawal, of either trial date, or of the judgment. We believe these circumstances are closely akin to a denial of due process, which on occasion has been sufficient grounds for finding a judgment totally void. [citations omitted] Without having to go so far, we believe the unusual passage of events falls within that category of extraordinary circumstances making a judgment merely voidable under T.R. 60(B)(8).

*Graham* 467 N.E.2d at 805. The court then turned to its discussion regarding the jury trial matter, "Having determined procedural error in the judgment against Schreifer, our decision to affirm the trial court is further strengthened by the fact that Schreifer was denied his right to trial by jury." *Graham, supra* at 805. *Graham* cannot be said to stand for the proposition that a defendant who has notice of his trial but fails to appear does not under T.R. 38 waive trial by jury. Such a holding would be in direct contradiction to the terms of the trial rule and there is nothing in *Graham* to suggest that that was the intent. We hold that defendant waived trial by jury.

Having decided that no notice was required and that Whittaker had waived jury trial, we come to the issue of whether or not the court abused its discretion in denying defendant's motion for relief from judgment pursuant to T.R. 60(B)(1). The standard for review of a trial court ruling on a T.R. 60(B) motion is clearly stated in *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, a case relied upon by Whittaker. In that case Justice Pivarnik stated the standard for review as follows:

> In a recent decision, *Siebert Oxidermo, Inc. v. Shields,* (1983) Ind., 446 N.E.2d 332, 340, this Court stated:

We initially note that our standard of review in the area of default judgments is a limited one. The decision whether or not to set aside a default judgment is committed to the sound discretion of the trial court. Thus, our review is limited to determining whether there has been an abuse of discretion. *Henderson v. American Optical Co.* (1981), Ind.App., 418 N.E.2d 549. ... The trial court's discretion is necessarily broad in this area as any determination of excusable neglect must turn upon the unique factual background of each case. No fixed rules or standards have been established as the circumstances of no two cases are alike. *Grecco v. Campbell* (1979), Ind. App., [179. Ind.App. 530] 386 N.E.2d 960.

An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom. *Town of Portage v. Clifford,* (1970) 254 Ind. 443, 449, 260 N.E.2d 566, 570; *McFarlan v. Fowler Bank City Trust Co.,* (1938) 214 Ind. 10, 14, 12 N.E.2d 752, 754; *B.G.L. v. C.L.S.,* (1977) 175 Ind.App. 132, 369 N.E.2d 1105, 1107.

*Boles,* 449 N.E.2d at 290.

In *Boles,* the supreme court affirmed the trial court's grant of relief from judgment where there had been a "breakdown in communication" between the defendant's insurance agent and the defendant's insurer which resulted in no appearance ever being filed on behalf of the defendant. The supreme court concluded:

> In view of all the facts and circumstances before the trial court, it did not abuse its discretion in finding that defendant's conduct was excusable in failing to appear and defend the lawsuit. There were sufficient facts presented to support setting aside the default judgment. The conclusions reached by the trial court were not clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.

*Id.* at 291. We note that in *Pinkston* the court of appeals applied this standard in reversing the trial court's denial of a T.R. 60(B) motion. *Pinkston, supra.* However in *Pinkston,* as in *Boles* and *Graham,* the defendant had no actual notice that her case had been set for trial.

■ We recognize that a reasonable argument can be made for both sides in this case on the issue of excusable neglect. It remains, however, the fact that there was clear evidence that the court itself specifically told the defendant that the trial would be held on March 9, 1990. The court was told by the defendant at that time that he thought he had a lawyer but he did not know who he was. The court clearly was telling the defendant that the trial was going ahead as scheduled. It was incumbent upon the defendant to do something more than make a phone call at that point. We cannot say that the trial court's conclusion that excusable neglect had not been shown is an abuse of his discretion—an erroneous conclusion clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom. It is in the nature of a discretionary decision that it could be correctly decided either way in many cases, so long as it was not beyond the limits into what could be judged an abuse. *See Graham, supra* at 807 n. 4. Where it remains within those limits, it is not for us to substitute our exercise of discretion for that of the trial court.

Whittaker asserts he has a meritorious defense to Dail's claim. It is not necessary to address that issue. We would reach that question only if we had concluded that the court abused its discretion in not finding excusable neglect.

■ We come now to defendant's contention that the actual damages awarded were excessive. Our standard for review in considering a claim that actual damages awarded are excessive is to determine if the damages awarded are "so outrageous as to indicate that the [court] was motivated by passion, prejudice, partiality or the consideration of improper evidence." *Groves v. First National Bank of Valpa-*

*raiso* (1988), Ind.App., 518 N.E.2d 819, 831. In *Groves* the court considered whether or not damages for emotional distress growing out of a claim of fraud related to a sale of real estate encumbered by liens not revealed by the seller were excessive. The court concluded that "in the absence of evidence of any physical or psychological manifestation of mental anguish, the award of nearly $100,000 is so high as to demonstrate passion or prejudice on the part of the jury." *Id.* at 832.

■ In this case the evidence was that Dail incurred $699.00 for medical expenses and lost wages in the amount of $624.00. There was evidence from a psychiatrist and a psychologist who treated plaintiff as well as a psychiatrist and therapist to whom plaintiff submitted herself for examination upon Whittaker's request. They all diagnosed her to be from suffering from post traumatic stress disorder or some stress related disorder. In addition, a counselor in the area of domestic violence prevention and treatment testified that plaintiff displayed a high level of anxiety. Evidence was that the defendant's actions had consisted of abducting the plaintiff, beating her with a wet towel so as to cause bruises, and threatening to kill her if he saw her on the street again. Here it cannot be said that an award of $99,423.90 is so outrageous as to indicate that the judge was motivated by passion, prejudice, partiality or the consideration of improper evidence. We conclude that the actual damages awarded were not excessive.

■ We come next to Whittaker's argument that his conviction and sentence for battery constitute a defense to Dail's claim for punitive damages under the common law rule of *Taber v. Hutson* (1854), 5 Ind. 322 and *Husted v. McCloud* (1983), Ind., 450 N.E.2d 491. In *Taber* the supreme court held that punitive damages could not be recovered from a defendant in those cases where the conduct complained of would subject the offender to prosecution by the state in a criminal action. In *Husted* the supreme court cited *Taber* in support of holding that punitive damages could not be recovered against a defendant who

had been sentenced pursuant to a plea agreement in which he pleaded guilty to certain charges and prosecution was waived as to others including a charge related to the actions which were the basis of the civil suit.

Subsequent to the *Husted* decision the legislature enacted I.C. 34–4–30–2 which provides that "it is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action".

Whittaker argues that the words "subject to criminal prosecution" refer only to the potential for criminal prosecution and do not include a situation, as we have here, where the civil defendant has in fact been convicted and sentenced.

The court of appeals addressed precisely this issue in the case of *Blankenship v. McKay* (1989), Ind.App., 534 N.E.2d 243. In that case the court had before it the question of whether a defendant, who had been convicted in a criminal prosecution for the acts which were the basis of a civil claim, could be liable for treble damages under I.C. 34–4–30–1. The court concluded that the treble damages provided for in I.C. 34–4–30–1, to the extent they exceeded actual damages, "would seem to fall within the scope of 'punitive damages' simply because they are not compensatory and are designed to deter the conduct which resulted in the damages complained of." *Id.* at 244. In that case, as in this case, the defendant argued that the language "subject to criminal prosecution" in I.C. 34–4–30–2 permits recovery of punitive damages only if prosecution is possible or contemplated but not if completed by a conviction and sentence. The defendant relied upon *Husted* for support. Judge Sullivan responded to the argument as follows:

> It must be noted that *Husted, supra,* was decided before the enactment of I.C. 34–4–30–2 which eliminated the criminal prosecution defense and which precludes double recovery [of treble damages and punitive damages]. To the extent, therefore, that *Husted* could be interpreted to bar a suit under I.C. 34–4–30–1 if the civil defendant has already received some

punitive sanction from the criminal court, it has been modified. 534 N.E.2d at 245.

The court concluded that "possible or actual subjection to criminal prosecution does not bar treble damages recoverable under I.C. 34–4–30–1." *Id.* at 245. We follow *Blankenship*'s interpretation of I.C. 34–4–30–2 and hold that Whittaker's conviction for battery is not a defense to Dail's claim for punitive damages in this case.

■■■ Whittaker contends that an interpretation of I.C. 34–4–30–2 which allows for the award of punitive damages based upon an act for which he has been convicted violates the double jeopardy clause of the Fifth Amendment to the U.S. Constitution and Article 1 Section 14 of the Indiana Constitution. We disagree.

Whittaker does not cite, nor have we found, any authority stating that the fifth amendment applies to awards of punitive damages in civil cases brought by private parties. The double jeopardy clause of the fifth amendment states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The United States Supreme Court has held that there are three distinct abuses against which the double jeopardy clause protects: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496. In *Halper* the Court addressed a case in which the United States had brought a civil suit under the civil False Claims Act, 31 U.S.C. §§ 3729–3731 seeking recovery for fraudulent acts by the defendant which had previously resulted in his conviction. The district court found that the defendant would be liable for up to $130,000 under the statute despite the fact that the government only paid out $585 in fraudulent charges and held this to be unconstitutional punishment in violation of the double jeopardy clause. The Supreme Court agreed that such damages could violate the fifth amendment because they constituted multiple punishments for the same offense. It held that under the double jeopardy clause a defendant who already

has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent it is not remedial, but only deterrent or retributive. *Id.*, 490 U.S. at 450, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

The Court, however, limited its holding to civil cases brought by the government subsequent to bringing a criminal prosecution for the same offense.

> Finally, nothing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties.

*Id.*, 450 U.S. at 451, 109 S.Ct. at 1903, 104 L.Ed.2d at 503. While this statement is not essential to the holding in the case, it is a clear statement of the inapplicability of the double jeopardy clause to litigation between private parties such as Dail and Whittaker. This conclusion is supported by *Hansen v. Johns–Manville Products Corp.* (1984), 734 F.2d 1036, 1042, (5th Cir.) *reh'g denied,* (1984), 744 F.2d 94, *cert denied,* (1985), 470 U.S. 1051, 105 S.Ct. 1749, 814 L.Ed.2d 814 and *Leonen v. Johns–Manville Corp.* (1989), 717 F.Supp. 272, 287 both of which hold that the double jeopardy clause does not prohibit multiple awards of punitive damages arising from the same tortious act in suits brought by private litigants.

Nor does the award of punitive damages in this case violate Article 1 Section 14 of the Indiana Constitution which states: "No person shall be put in jeopardy twice for the same offense." Our supreme court addressed this issue in *Eddy v. McGinnis* (1988), Ind., 523 N.E.2d 737. In that case I.C. 34–4–30–2 was challenged as being unconstitutional under Article 1 Section 14 of the Indiana Constitution where the defendant had been charged with driving while intoxicated in connection with the automobile accident from which arose plaintiff's claim for punitive damages. The majority of the court concluded and held that the "double jeopardy" doctrine of *Taber* was not founded upon the Indiana Constitution, that the legislature was free to change the substantive (common) law as expressed in *Taber,* and had done so in enacting I.C. 34–4–30–2.

Whittaker argues that *Eddy* did not involve a defendant who had been convicted and sentenced. However, the supreme court in *Eddy* specifically noted that "the outcome of these charges [against the defendant] is not a matter of record in this appeal." It must be concluded from that observation that it was not material to the supreme court's decision whether or not the defendant had been convicted and sentenced or merely charged with an offense.

■ Finally, we look to Whittaker's claim that the punitive damages assessed by the trial court were excessive. In order to vacate an award of punitive damages as excessive, it must clearly appear to have been the result of passion or prejudice. In reviewing the award we give consideration to the nature of the tort, the extent of actual damages and the economic wealth of the defendant. *Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572, 580. As Whittaker points out, there was no evidence as to his economic wealth at the trial. Absence of such evidence in itself and alone does not preclude an award of punitive damages. *Id.*

Considering that the trial court found plaintiff Dail's actual damages to be $99,-423.90, and that Whittaker's conduct consisted of abducting Dail, beating her, and threatening her life, we cannot conclude that an award of punitive damages in the amount of $198,757.80 was the result of passion or prejudice.

As Whittaker points out in argument on several aspects of the case, he apparently had available to him evidence which could have cast doubt on plaintiff's credibility and perhaps would have led to an opposite result. We recognize that Whittaker has not had an opportunity to present that evidence except as it was presented in support of his motion for relief from the judgment. We must reiterate that Whittaker failed to appear at trial and the court, acting within its sound discretion, found that his failure to be present at trial was not excusable. Whatever value the evidence might have

had for him was lost by his own actions or lack of them.

The judgment against plaintiff and the denial of the motion for relief from judgment are affirmed.

BUCHANAN, J., concurs.

RUCKER, P.J., concurring in part and dissenting in part.

RUCKER, Presiding Judge, concurring in part and dissenting in part.

I agree with the majority opinion that the judgment entered by the trial court was not a default judgment since plaintiff Dail presented evidence on both liability as well as damages as though defendant Whittaker were present. *Pinkston v. Livingston* (1990), Ind.App., 554 N.E.2d 1173; *Aetna Securities Co. v. Sickels* (1949), 120 Ind. App. 300, 88 N.E.2d 789. Accordingly, defendant Whittaker was not entitled to three days' notice as required for default judgments and the trial court did not err by not giving notice. I would nonetheless reverse the trial court's denial of Whittaker's motion for relief from judgment.

Ind.Trial Rule 60(B) dictates in pertinent part:

[O]n motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of ... final judgment ... for the following reasons: (1) mistake, surprise, or excusable neglect; .... The motion shall be filed ... not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3) and (4).

It is true in reviewing the denial of a T.R. 60(B) motion, we will reverse only if the trial court has abused its equitable discretion. *Graham v. Schreifer* (1984), Ind.App., 467 N.E.2d 800. Such an abuse will be found only if the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 802. However, in the case before us the trial court's judgment was clearly against the logic and effect of the facts and circumstances before it.

Within five days of the entry of judgment Whittaker filed his T.R. 60(B) motion alleging excusable neglect. At a hearing on the motion, Whittaker introduced evidence demonstrating his failure to appear for trial was the result of a breakdown in communication.

Whittaker failed to appear at pre-trial conference which was held five days before trial. The trial court then telephoned Whittaker and advised him the case would proceed to trial as scheduled. Under the impression that his homeowner's insurance might have provided coverage for his defense, Whittaker immediately contacted his insurance carrier. Whittaker testified that he believed the carrier would retain counsel on his behalf who would then enter an appearance.

Apparently Whittaker's insurance carrier did contact an attorney, however the attorney testified it was his impression the insurance carrier was hiring him to file a declaratory judgment action on the intentional torts exclusion provision of Whittaker's homeowner's policy. Only after judgment was entered against Whittaker did it become apparent that Whittaker's insurance carrier had intended to hire the attorney to represent him.

Clearly there was a misunderstanding between Whittaker's insurance carrier and the attorney who was hired to represent Whittaker. The record before us fails to reveal any evidence Whittaker in any way contributed to this misunderstanding.

The facts in this case are closely analogous to the facts in the case of *Boles v. Weider* (1983), Ind. 449 N.E.2d 288, which is cited by the majority. In that case the trial court initially entered default judgment against the defendant but reversed itself and set aside the judgment after hearing evidence of the breakdown in communication between defendant's insurance carrier and plaintiff's insurance carrier. Our fourth district reversed indicating that the breakdown in communication, without more, did not justify the trial court's finding of excusable neglect. *Boles v. Weider* (1982), Ind.App., 440 N.E.2d 720, 722. On petition to transfer, our supreme court de-

termined that the breakdown in communication between the insurance agent and insurance carrier resulted in neither of them hiring counsel to represent the defendant, and therefore the trial court did not abuse its discretion in finding defendant's failure to appear and defend the lawsuit excusable.

The majority recognizes *Boles, supra,* but distinguishes it from the case before us on the grounds that unlike Whittaker, the defendant in *Boles* had no actual knowledge that the case had been scheduled for trial. This distinction, in my opinion, had no bearing on our supreme court's ruling. The apparent determining factor of the *Boles* decision was the "breakdown in communication".

In the case before us there is ample evidence of a breakdown in communication between Whittaker's insurance carrier and the attorney ultimately hired to defend Whittaker. That breakdown in communication resulted in counsel not being present at trial to represent Whittaker. If the failure of the defendant in *Boles* to appear and defend the lawsuit is excusable, then under the circumstances the failure of defendant Whittaker to appear and defend his lawsuit is likewise excusable.

In reviewing the reinstatement of a cause of action our court has a long history of considering a number of factors including the substantial amount of money involved, the existence of a meritorious claim, the short length of time between the judgment and the request for relief, and the lack of prejudice to the defendant. *Bross v. Mobile Home Estates, Inc.* (1984), Ind.App., 466 N.E.2d 467; *Fulton v. Van Slyke* (1983), Ind.App., 447 N.E.2d 628; *Carvey v. Indiana National Bank,* (1978) 176 Ind.App. 152, 374 N.E.2d 1173; *Green v. Karol* (1976), 168 Ind.App. 467, 344 N.E.2d 106. All of these factors are present in the case before us. The amount of money involved in this case is substantial; Dail was awarded judgment of nearly

three hundred thousand dollars ($300,-000.00). Whittaker apparently has a meritorious defense to plaintiff's claim; Dail asserted, among other things, that she suffered emotional distress and psychological damage because she was abducted by Whittaker, a virtual stranger; Whittaker produced evidence, including letters from Dail, which demonstrated the two were not strangers, but rather they were well acquainted. Only a five-day period elapsed between the judgment and the request for relief; and Dail has not shown any way in which she would be prejudiced by reinstatement.

Moreover, this court has demonstrated a strong preference for deciding cases on their merits. "[I]n our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Chrysler Corp. v. Reeves* (1980), Ind.App., 404 N.E.2d 1147, 1153 *quoting Edgar v. Slaughter,* (8th Cir.1977) 548 F.2d 770, 772–73. Whittaker deserves an opportunity to be heard. I would therefore reverse and remand for trial.